Vicki Carew JOHNSON, Plaintiff,

v.

**MOREHOUSE COLLEGE, INC., Defendant.**

**No. Civ.A. 1:00CV2117 JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

March 28, 2002.

Mickiel Dewayne Pete, Cochran Cherry Givens Smith & Sistrunk, Atlanta, GA, for Vicki Carew Johnson, plaintiff.

Burton Freeman Dodd, Whitney M. Ferrer, Whitney M. Ferrer, Fisher & Phillips, Atlanta, GA, for Morehouse College (Inc.), defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [19–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motion should be **GRANTED** as to the claims that stem from federal law. Plaintiff's claims that stem from state law should be **DISMISSED without prejudice.**

## BACKGROUND

This case arises under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (hereinafter "FMLA"). Plaintiff Vicki Carew Johnson ("Johnson" or "plaintiff") is a Fulton County resident who was employed by defendant Morehouse College, Inc. ("Morehouse" or the "College"), an educational institution organized under Georgia law. Johnson alleges that Morehouse violated her rights under the FMLA and Georgia state contract law. Morehouse responds that it is entitled to summary judgment as to all of plaintiff's claims.

Unless otherwise indicated, the Court draws the undisputed facts from "Defen-dants' Statement of Undisputed Material Facts" ("SMF") [19]. If however, plaintiff has disputed a specific fact and pointed to evidence in the record supporting her version of events, the Court has viewed all evidence and factual inferences in the light most favorable to plaintiff, as required on a defendant's motion for summary judgment.[1] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). Accordingly, the following facts are either not disputed or are viewed in the light most favorable to the plaintiff.

The Morehouse Family Medical Leave Act will also be referred to as "FMLA" due to the fact it states that it is to be interpreted so as to comply with the FMLA and applicable regulations thereunder. The Morehouse plan allows an employee who has worked for the College for at least twelve consecutive months, for a total of at least 1,250 hours, to take up to twelve weeks of unpaid leave for a medical emergency or for the birth and care of a newborn biological child.[2] (SMF ¶¶ 1–2.) An employee who is absent for three or more consecutive days due to an FMLA qualifying event may have her absence

---

1. In Plaintiff's Disputed Facts and Issues For the Jury [22], Johnson sometimes denies one of defendant's asserted material facts with an explanatory comment that is not responsive to the fact at issue. For example, plaintiff's method of disputing Defendant's Statement of Facts at paragraphs 59, 61–67, 69, 71, 75–78, is to unilaterally proclaim that Cynthia Rawles, the Associate Director of Human Resources, did not consider plaintiff's administrative leave or plaintiff and Gaffney's alleged agreement as to when her FMLA leave commenced. Such an answer to all 14 statements is inappropriate and unresponsive, since many of the statements detail statements individuals made or actions people did. The fact that plaintiff seeks to deny such events oc-curred because she disagrees with the assumption upon which the individuals may have been operating, namely the date when her FMLA leave began, is not sufficient to deny the substance of the factual statements. Where the Court can discern that Johnson is actually disputing the occurrence of a stated fact, it gives her the benefit of the doubt. But otherwise, as LR 56.1(B)(2) dictates, facts not specifically responded to are deemed admitted.

2. FMLA leave may be requested by a qualifying Morehouse employee for a duration of up to twelve weeks within a "rolling" twelve month period, starting with the first incidence of usage. (*Id.* ¶ 5.)

charged against her FMLA entitlement. (*Id.* ¶ 6.)

Pursuant to the terms of the Morehouse policy, an employee who is contemplating taking FMLA leave must complete a FLMA Employee Information Handout, available in the Morehouse Office of Human Resources. (*Id.* ¶ 3.) An employee is required to give 30 days notice, if feasible, of his or her intention to take the leave. (*Id.* ¶ 4.) For leave following the birth of a child, an employee must first use any available accrued vacation and sick leave until exhausted. (*Id.* ¶ 7.) This paid leave resulting from the accrual of vacation and sick leave runs *concurrently* with FMLA leave. (*Id.* ¶ 8.) Following the use of accrued vacation and sick leave, the balance of the leave will be unpaid.[3] (*Id.* ¶ 7.)

Johnson's employment history and the events leading up to the Complaint [1] are as follows: Johnson started working for Morehouse in October 1993 as a secretary in the department of sociology. (SMF ¶ 11; Johnson Dep. at 9.) On August 16, 1995, Johnson began to work as an administrative assistant in the office of Community Services. (SMF ¶ 12.) As of July 1997, Johnson's employment status was changed to that of an "at-will" employee when Morehouse instituted a pay for performance compensation system. (*Id.* ¶ 13; Carpenter Aff. ¶ 4.)

At some point during the summer of 1997, Johnson claims that the Director of the Community Services Office, Kevin Moses ("Moses"), offered her a promotion to a position called "Administrative Service Learning Coordinator." (SMF ¶ 25.) Johnson states she also received the promotion offer via a letter from Moses which detailed the compensation package, but that it did not include a definite term of employment. (*Id.* ¶¶ 26, 28.) Johnson states that she accepted the promotion from Moses both orally and in writing. (*Id.* ¶¶ 27–28.) She never, however, received a letter from Morehouse indicating the change in her employment status, and in fact her official status of "administrative assistant" never changed from the time she was hired for that position in August of 1995 to the time she was fired in May of 1999. (*Id.* ¶¶ 30, 37.) Although Moses had no authority to offer promotions, Johnson asserts it was her belief that he did enjoy such authority.[4] (*Id.* ¶ 32; Pl.'s Disp. of Def.'s Stmt. of Mat. Facts [22] ¶¶ 31–32.) As a result, she states that she began to perform additional responsibilities within the office in accordance with the promotion. (Pl.'s Disp. of Def.'s Stmt. of Mat. Facts [22] ¶¶ 31–32.)[5]

On August 19, 1997, Johnson was injured in a car accident. (SMF ¶ 14.) As a result, she took leave pursuant to Morehouse's FMLA policy from August 20, 1997 to January 5, 1998. (*Id.* ¶¶ 15–16, 40.) From August to November of 1997,

---

3. The Morehouse vacation policy regarding sick leave provides that a full-time employee accrues one day of paid sick leave per month, and that a full-time employee may accumulate up to a maximum of thirty days of paid sick leave. (*Id.* ¶ 9–10.) As to annual leave, a full-time employee accrues 1.83 paid vacation days per month of service, and an employee may accumulate up to a maximum of 22 paid vacation days. (SMF ¶ 10.)

4. Eddie Gaffney ("Gaffney") is the Dean of Student Services at Morehouse. (SMF ¶ 34.) Upon learning that Moses had made Johnson a promotion offer, Gaffney informed Moses that he did not have the authority to make such an offer and that there was no money available for such a promotion. (Gaffney Dep. at 9.) The position of Service Learning Coordinator was never created nor approved by Gaffney. (*Id.* at 13.) It is not clear from the record, however, if either Gaffney or Moses ever informed Johnson that she would not receive the promotion.

5. The dispute concerning this alleged promotion has no bearing on the Court's consideration of plaintiff's FMLA claim.

Johnson was paid her full salary and received full benefits based on her accrued annual and sick leave. (*Id.* ¶ 17.) Pursuant to Morehouse policy, the annual and sick leave ran concurrently with Johnson's FMLA leave. (*Id.*) Johnson is aware that FMLA leave runs concurrently with accrued vacation or sick leave: Johnson admits that as a result of taking FMLA leave from August 1997 through January 1998, she fully understands the procedure for how to obtain leave for an injury pursuant to Morehouse's FMLA policy. (*Id* ¶ 24; Johnson Dep. at 65.)

Following plaintiff's return from FMLA leave in January 1998, Morehouse allowed her to work for more than half of the business day from her home.[6] (SMF ¶ 18–19.) Although the record is not clear as to how long this arrangement lasted, all parties agree it continued for the months of January through March of 1998. (*Id.* ¶ 21.) At some point during this period, Johnson learned she was pregnant. (*Id.* ¶ 22.) Around this time, she informed her co-workers in the Office of Community Services that she was pregnant. (*Id.* ¶ 23.)

Morehouse placed Johnson on indefinite administrative leave on August 25, 1998. (Johnson Dep. at 52.) Individuals are placed on administrative leave when management wishes to conduct a review or make a change within the organization. (SMF ¶ 39; Rawles Dep. at 4.) During the time Johnson was on administrative leave, she was not required to report to work, but was still paid her full salary and benefits. (SMF ¶¶ 40–41; Johnson Dep. at 53.) Johnson was officially considered to be a Morehouse employee. The administrative leave was implemented so that an internal investigation of the Office of Community Services could be conducted. (Johnson Dep. at 52.) Moses, the Director of the Office and the man who had tried to give Johnson the promotion, was ultimately fired for failing to follow directions of a superior and for running another business out of the Office of Community Services. (SMF ¶ 36.) Indeed, it was plaintiff Johnson who provided much of the information that led to the firing of Moses. (Gaffney Dep. at 12, 42.)

In November of 1998, the investigation of the Office of Community Services ended. (Gaffney Dep. at 22.) Johnson admits that she was aware that a coworker had returned to work from administrative leave around this time. (Pl.'s Stmt. of Mat. Facts [22] ¶ 28.) Eddie Gaffney ("Gaffney"), the Dean of Student Services at Morehouse, states that he did not bring Johnson back from administrative leave at this time because he knew she was due to give birth a few weeks later. (Gaffney Dep. at 22.)

Johnson gave birth on December 7, 1998. (*Id.* ¶ 44.) Contrary to the Morehouse stated policy, she did not submit the proper FMLA request form in anticipation of her delivery. (*Id.*) In addition, she failed to submit the required paper work in order for her FMLA request to be processed in December 1998, or January and February, 1999. (*Id.* ¶ 45; Johnson Dep. at 59.)

A letter dated February 2, 1999 ("February 2 letter") from Morehouse signed by Gaffney was hand delivered to Johnson's home on February 19, 1999.[7] (SMF ¶¶ 47–

6. She worked in the Morehouse Office of Community Services from 9:00 a.m. to noon and then worked the remainder of the day from her home. (SMF ¶¶ 18–19.) Johnson admits she was unable to perform her job duties of answering the telephone, filing, and distributing the mail while she worked from home, and as a result, she delegated these job duties, along with other tasks, to student assistants who were employed in the Office of Community Services. (SMF ¶ 20; Johnson Dep. at 46–47.)

7. Morehouse had sent the February 2 letter to Johnson through the mails on two prior occasions. (Gaffney Dep. at 19.) Johnson claims,

48.) The letter informed Johnson that the administrative leave had been "cleared for [her] return," but due to the birth of her daughter she would be "transferr[ed] to family medical leave."[8] (*See* Letter Dated February 2, 1999 attached as Ex. 11. to Pl.'s Memo of Law In Supp. of Motion for Summ. J. [19].) Enclosed in the letter was a copy of the Family Medical Leave request form, which Gaffney requested that plaintiff promptly complete and return to Human Resources. (*Id.* ¶ 50.)

Following the receipt of the letter, Johnson called Cynthia Rawles ("Rawles"), the Associate Director of Human Resources at Morehouse whose job it is to calculate FMLA leave. (*Id.* ¶¶ 53–55.) Johnson asked Rawles to "calculate what leave she had." Rawles told Johnson that she calculated her FMLA leave period to start from December 7, 1998, the date on which plaintiff gave birth, and to end on March 1, 1999, which was the date falling twelve weeks after the birth of her child. (*Id.* ¶¶ 56, 58.) In addition, Rawles informed Johnson that if she was in good standing on the payroll at the time she gave birth, she would have accrued a maximum of twenty three vacation days and thirteen sick leave days for which she could receive paid leave during her FMLA period.[9] (*Id.* ¶¶ 59–60.)

Johnson states that she informed Rawles that, in her opinion, these calculations were wrong because Rawles had failed to take into account the fact that Johnson was on paid administrative leave until February 19, 1999. (Pl.'s Disp. of Def.'s Stmt. of Mat. Facts [22] ¶ 59.) Although she understood that during administrative leave she was still a "Morehouse employee," she thought that because she was told not to "act in any capacity as a representative of Morehouse College" while on administrative leave that she did not have to comply with the FMLA requirements and could not use her FMLA leave. (Johnson Dep. at 61–62.)

Even though March 1, 1999 marked the twelve week anniversary of the birth of her child, Johnson did not report to work. (*Id.*) Johnson was notified via letter from Rawles that as of March 1, 1999, Morehouse College would stop paying Johnson her salary. (*See* Rawles letter dated March 1, 1999 ("Rawles letter") attached as Ex. 12 to Def.'s Memo of Law In Supp. of Motion for Summ.J. [19].) Due to the fact that Morehouse believed her FMLA leave expired twelve weeks after the occurrence of the FMLA qualifying event, it paid her for thirty six days of accrued paid leave and additional paid leave for all holidays and Christmas break—which amounted to nine and a half weeks of paid leave

however, not to have received either letter, thus necessitating the hand delivery of the February 2 letter. (SMF ¶ 49.)

8. The February 2 letter stated in relevant part:

We want to congratulate you and Glen on the birth of your daughter. The administrative leave that was initiated by Dr. John Stansfield has been cleared for your return. However, since the birth of your daughter, we will transfer you to family medical leave. In order for us to give you the appropriate time for family medical leave, please fill out the enclosed forms and return it to

human resources. We look forward to your return to Community Services and the Division of Community Services."

(*See* Letter dated February 2, 1999 attached as Ex. 11. to Pl.'s Memo of Law In Supp. of Motion for Summ.J. [19].)

9. Johnson was credited with the full accrual of both vacation days and sick leave available to her for the time period of January 1998 through January of 1999, even during the time she was allowed to work at home part-time from January – March 1998 and even during the time she was on paid administrative leave for over three months, from August 25, 1998 to December 7, 1998.

after the birth of her baby. (*Id.*) So as to provide Johnson with a full twelve weeks of paid maternity leave and in expectation of her eventual return, Morehouse also advanced plaintiff future sick leave, which extended her paid leave for another week and a half. (*Id.*) At the time Morehouse stopped paying Johnson a salary, she had been on their payroll, without performing any work, for over six months. (SMF ¶ 68.)

Even though plaintiff did not report to work on March 1 and did not submit her FMLA forms, as directed, Morehouse did not fire her. Instead, on March 26, 1999, Johnny C. Nimes ("Nimes"), the Associate Dean of Student Services, mailed Johnson a letter in which he instructed her to submit the FMLA form and physician's statement to explain her absence. (*See* Nimes letter dated March 26, 1999 attached as Ex. 14 to Def.'s Mem. of Law in Supp. Of Mot. for Summ.J.[19].) In addition, Nimes informed Johnson in the letter that if she did not submit the FMLA form by April 9, 1999, she would be expected to report to work on April 12, 1999. (*Id.*) Johnson admits that she received Nimes's letter. (Johnson Dep. at 81–82.) Johnson did not, however, return the FMLA form by April 9, 1999. (Johnson Dep. at 86.) In addition, Johnson refused to return to work on April 12, 1999. (*Id.* at 84.) Johnson claims that on several occasions she attempted to contact Nimes and Gaffney. (Pl.'s Stmt. of Mat. Facts [22] at ¶ 36.) However, she never actually spoke with either man. (*Id.* ¶¶ 41–43.) She states that because Nimes never responded to the telephone messages she left him on April 7 and 8, 1999, she sent Nimes a letter requesting a meeting. (*Id.*)

On May 4, 1999, the Morehouse Office of Human Resources received from Johnson the FMLA form and the accompanying Physician's statement regarding Johnson's FMLA leave from her doctor. (SMF ¶ 85.) The Physician's Statement noted that Johnson ceased being medically incapacitated on February 1, 1999. (*See* Physician's Statement dated March 26, 1999 attached as Ex. 15 to Def.'s Mem. of Law in Supp. Of Mot. for Summ.J. [19].) As of the end of the day on May 17, 1999, Johnson had not spoken directly with Gaffney, Nimes, or any member of the Human Resources Office to request additional leave without pay or to inform them of the date on which she intended to return to work. (Gaffney Dep. at 52–32; Carpenter Dep. at 32.) At that time, Johnson was dismissed from her employment at Morehouse, effective May 17, 1999, for job abandonment.[10] (SMF ¶ 70.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d

10. During FMLA leave the employer is required to maintain the employee's "group health plan" coverage as if the employee had continued in employment continuously for the duration of the leave. 29 U.S.C. § 2614(c)(1). If an employee fails to return from FMLA leave after the period of leave to which the employee is entitled has expired, the employer may recover the premium that the employer paid for maintaining the health care coverage of the employee. 29 U.S.C. § 2614(c)(2)(A). Notwithstanding its right to recoup this money, Morehouse never requested that Johnson reimburse it for the medical insurance premiums it paid on her behalf. (SMF § 72.)

265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence [11] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysi-

cal doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. *Johnson's Family and Medical Leave Act Claim*

Johnson alleges that Morehouse violated her rights under the FMLA. Morehouse responds that it is entitled to summary judgment because it afforded plaintiff with benefits that clearly surpassed the minimum level of benefits required by the FMLA. The Court concludes that Morehouse is entitled to summary judgment as to plaintiff's FMLA claims for the reasons detailed below.

### A. *Prerequisites For an FMLA Claim*

The FMLA, enacted in 1993, was intended "to strike a balance between the protection of the American worker and the development of an effective workforce." *Palazzolo v. Galen Hosps. of Texas,* 1997 WL 837951, *4 (N.D.Ga. Nov.25, 1997) (Thrash, J.). "The purposes of the Act include balancing the demands of the workplace with the needs of families, entitling employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child,

---

11. The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

spouse, or parent who has a serious health condition; accomplishing these purposes in a manner that accommodates the legitimate interests of employers; and promoting the goal of equal employment opportunity for women and men." *Walthall v. Fulton County Sch. Dist.*, 18 F.Supp.2d 1378, 1381 (N.D.Ga.1998) (Thrash, J.). *See also* 29 U.S.C. § 2601.

The FMLA requires that "an eligible employee [12] shall be entitled to a total of twelve workweeks of leave during any twelve month period" following the occurrence of a qualifying event. 29 U.S.C. § 2612(a)(1). The statute further provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave ... for any part of the twelve-week period of [FMLA] leave." 29 U.S.C. § 2612(d)(2)(A); 29 U.S.C. § 2612(d)(2)(B). After an eligible employee returns from the statutory maximum period of twelve weeks FMLA mandated leave, an employee is entitled to be reinstated to his or her former position, or an equivalent one. 29 U.S.C. § 2614(a).[13] A

failure to do so by the employer is unlawful under 29 U.S.C. § 2615(a)(1).

■ In the Eleventh Circuit, there are two types of claims cognizable under the FMLA: interference claims,[14] in which employers burden or outright deny substantive statutory rights to which their employees are entitled, and retaliation claims,[15] in which employers discharge employees for exercising their FMLA right to leave. 29 U.S.C. § 2615(a)(1) & (2) (1999); *see also O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir.2000). Plaintiff alleges both claims in her Complaint.

Before analyzing plaintiff's interference and retaliation claims, however, the Court must answer the preliminary question of whether plaintiff's leave was protected under the FMLA. First, the Court must decide whether Morehouse is an "eligible employer" under the FMLA and whether Johnson is an "eligible employee." It is undisputed that the answer to both of these questions is yes. (*See* Pl.'s Mand. Disc. [2]; Answer of Morehouse College [5].) [16] The next question is whether plain-

---

**12.** " 'The term "eligible employee" means an employee who has been employed—(I) for at least twelve months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous twelve-month period.' 29 U.S.C. § 2611(2)(A) (1999). The parties do not dispute [Johnson] was an 'eligible employee.' " *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 n. 2 (11th Cir. 2000).

**13.** " '[A]ny eligible employee who takes leave under section 2612 ... shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position....' *Id.* § 2614(a)(1)." *O'Connor*, 200 F.3d at 1352 n. 4.

**14.** " 'It shall be unlawful for any employer to interfere with, restrain, or deny the exercise

of or the attempt to exercise, any right provided under this subchapter.' *Id.* § 2615(a)(1)." *O'Connor*, 200 F.3d at 1352 n. 5.

**15.** " 'It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.' *Id.* § 2615(a)(2)." *O'Connor*, 200 F.3d at 1352 n. 6.

**16.** At all times relevant, Morehouse had more than 50 employees in 20 or more workweeks in the current or preceding calendar year and was engaged in commerce or was part of an industry affecting commerce, making it an "eligible employer" under the FMLA, 29 U.S.C. § 2611(4)(A). (*See* Answer of Morehouse College [5].) Plaintiff had been employed for at least twelve months by Morehouse and for at least 1,250 hours of service during the previous twelve month period, qualifying her for leave under the FMLA. *(See id.)*

tiff was incapacitated due to a qualifying event. The birth of plaintiff's child qualifies as such an event. *See* 29 C.F.R. § 825.114(a)(1) & (2).

### B. *Interference Claim*

This is not a typical interference claim in which the employer has denied the employee's request to take FMLA leave. Morehouse was willing to provide Johnson with FMLA leave despite the fact that she failed to return the proper forms to request such leave in a timely manner. Indeed, even though it believed that plaintiff's FMLA leave expired on March 1, 1999, and even though plaintiff ignored Morehouse's directive to return to work, Morehouse was kind enough to allow plaintiff an additional *eleven* weeks of leave beyond the original twelve weeks of FMLA leave, before it finally terminated her for her refusal to reclaim her job. Nevertheless, Johnson argues that Morehouse violated her federal rights by "taking away earned money" from her by "back dating her FMLA past the time she came off of administrative leave." (Pl.'s Resp. to Def.'s Mot. for Summ.J. [22] at 11.)

Essentially, Johnson argues that Morehouse interfered with her rights under the FMLA by failing to let her elect to begin her FMLA leave period on February 19, 1999, the earliest date to which plaintiff admits to being notified that she was no longer on administrative leave. (*Id.* at 12.) Johnson claims that she should have been allowed to receive her accrued paid leave, comprised of her annual and sick leave of 36 days, from the date she was notified

that she was not on administrative leave—not from the date she gave birth. Despite the fact that Johnson was not required to report to work or perform any work related activities during her period of administrative leave and despite the fact that Morehouse had the power to end plaintiff's administrative leave at any time it chose,[17] plaintiff nonetheless argues that the "Human Resources Department [of Morehouse] unlawfully took away [her] *earned* income from December 7, 1998 until February 19, 1999, and replaced it with [her] annual and sick leave." (*Id.*) As a result, she alleges that Morehouse violated her rights under the FMLA by failing to "substitute any of the accrued vacation and sick leave of the plaintiff for leave provided under the FMLA" that began to run once she was notified she was no longer on administrative leave. (Compl. [1] at 1.) In the alternative, Johnson argues that her supervisor, Gaffney, ratified her FMLA start date to begin on February 19, 1999. (*Id.*)

Morehouse responds that Johnson was switched to FMLA leave on December 7, 1998, the date she gave birth. (Def.'s Br. in Supp of Mot. for Summ.J. [19] at 12.) Since the birth of a child is a qualifying event for FMLA leave, Morehouse argues that, as a matter of law, it can begin the clock on an employee's allowed FMLA period without formal notification if the latter is, in fact, on leave at the time of the qualifying event. (*Id.*) In addition, Morehouse asserts that its placement of plaintiff on FMLA leave had the effect of ending her term of administrative leave, regardless of plaintiff's opinion as to whether she was still on administrative leave.[18] (*Id.*)

**17.** Indeed, Morehouse ended the administrative leave of other employees in November, 1998, but out of solicitude for plaintiff's imminent due date in December, it did not make her return to work prior to delivery of her baby. Moreover, Morehouse paid plaintiff and did not require her to use any accrued leave for the period of time between the end

of the administrative leave period and the birth of her child.

**18.** Again, the lengthy administrative leave was nothing more than a paid unearned vacation for plaintiff that the employer was free to end at any time.

As to Johnson's second argument, that Gaffney ratified the change of her FMLA start date to begin on February 19, 1999, Morehouse responds that Gaffney never made such a statement and, even if he did, such a statement can not change the employer's obligations under the FMLA. (Def.'s Reply Br. in Supp. of Mot. for Summ.J. [23] at 7–8.) The Court will address each of the arguments in turn.

### 1. *FMLA Start Date*

Plaintiff argues that she has the right to "elect when she goes on FMLA leave." (Pl.'s Resp. to Def.'s Mot. for Summ.J. [22] at 12.) Further, she contends that because Morehouse did not notify her that she was on FMLA leave as of the date of the birth of her child, December 7, 1998, she necessarily had not elected to use her FMLA leave. (Pl.'s Resp. to Def.'s Mot. for Summ.J. [22] at 12.) Defendant Morehouse responds that it has the right to place its employee on FMLA leave once a qualifying event occurs. (Def.'s Memo. of Law in Supp. of Mot. for Summ.J. [19] at 12.) The question for the Court is whether plaintiff who is already on leave must be given notice that the FMLA clock is ticking once a FMLA qualifying event has occurred.

In support of the contention that an employer can place an employee on FMLA leave once a qualifying event occurs, Morehouse directs the Court to *McGregor v. Autozone*, 180 F.3d 1305 (11th Cir.1999). In *McGregor*, the employer provided its employees with thirteen weeks of paid disability in the event an employee gave birth. The plaintiff took fifteen weeks off from work, thirteen of which were paid pursuant to the terms of the employer's

disability policy. However, the employer did not notify the plaintiff that her disability leave ran concurrently with the twelve weeks of unpaid leave that she was entitled to under the FMLA. Because Autozone did not notify her that her disability ran concurrently with her FMLA leave, the plaintiff argued that she was entitled to her thirteen weeks of paid disability leave, plus an additional twelve weeks of unpaid FMLA leave, for a total of twenty-five weeks of leave,[19] even though the FMLA only provides for twelve weeks of leave for a qualifying event. When plaintiff returned to work after her fifteen week absence, she was demoted. Plaintiff brought suit alleging that the employer violated its statutory obligation to restore her to her prior or equivalent position upon her return from FMLA leave.

The question before the Eleventh Circuit was whether an employer's failure to notify an employee that her paid leave was running concurrently with the FMLA leave created a windfall for the plaintiff, such that she could increase the twelve week FMLA leave of absence by the time she was on the paid leave of absence. The Eleventh Circuit answered no. In order to resolve the dispute in *McGregor*, the Eleventh Circuit had to assess the validity of an FMLA regulation, 29 C.F.R. § 825.208, which required an employer to notify an employee that her absence is being counted as FMLA leave before the absence can be charged against the twelve week entitlement. 180 F.3d at 1307. The *McGregor* court held that this FMLA regulation was invalid and unenforceable because it was "manifestly contrary to the [FMLA] statute." *Id.* at 1308. Specifically, the regulation had the practical effect

---

**19.** Similarly, Johnson seeks to start her twelve weeks of FMLA leave after the date that she believes represents the end of her administrative leave: February 19th. As noted *infra*, however, even granting plaintiff her questionable assumption that her FMLA leave began on February 19th, Morehouse nonetheless gave her an additional eleven weeks off before finally having to terminate her for her refusal to come back to work.

of converting the FMLA statute's minimum of federally mandated unpaid leave into an entitlement to an additional twelve weeks of leave unless the employer prospectively notified the employee that she is using her FMLA leave. The court stated the FMLA provides "for *only* twelve weeks of leave ... [and] does not suggest that the twelve week entitlement may be extended." *McGregor,* 180 F.3d at 1308 (emphasis added). Therefore, the court concluded that the employer acted appropriately when it exercised its statutory right to require plaintiff to run her accrued paid leave contemporaneously with the twelve weeks of FMLA leave, even though the employer may have given no notice to the employee of this calculation. *Id.* Thus, under the Eleventh Circuit's holding in *McGregor,* Morehouse argues it can place an employee on FMLA leave without notifying them prospectively. (Def.'s Reply Br. in Supp. of Mot. for Summ.J. [23] at 2.)

 The Court agrees with Morehouse that *McGregor* supports its position on this question.[20] An employer may indeed construe as FMLA leave any leave that an employee is taking as a result of a qualifying event, without express notice to the employee.[21] *McGregor,* 180 F.3d 1305, 1308. The FMLA was intended only to

---

20. In support of her contention that she had the right to elect when to start her FMLA leave, Johnson cites to three cases: *Longstreth v. Copple,* 189 F.R.D. 401 (N.D.Iowa 1999) (discussing notice requirements for FMLA leave); *Schober v. SMC Pneumatics, Inc,* 2000 U.S.Dist. LEXIS 19088, 2000 WL 1911684 (S.D.Ind. Dec. 4, 2000) (denying defendant's motion in limine to exclude at trial testimony regarding whether defendant considered leave from work to be FMLA qualifying); and *Donnellan v. New York City Transit Authority,* 5 WH Cases 2d 942(BNA) (S.D.N.Y.1999) (finding that employer did not violate FMLA when it terminated plaintiff after she had been on leave seventeen weeks due to a serious medical condition, despite fact employer had not notified her that twelve weeks of leave were taken pursuant the FMLA).

The latter two cases do not support plaintiff's contention. Even to the extent that *Longstreth* bolsters plaintiff's argument, the Eighth Circuit, which is the circuit in which the Iowa district court is located, has since ruled that it agrees with the Eleventh Circuit's holding in *Autozone* that the FMLA regulation 19 C.F.R. § 825.208 regarding notice "improperly converts the statute's minimum of federally mandated unpaid leave into an entitlement to an additional twelve weeks of leave unless the employer specifically and prospectively notifies the employee that she is using her FMLA leave." *Ragsdale v. Wolverine Worldwide Inc.,* 218 F.3d 933, 937 (8th Cir. 2000). Finally, even if these cases were on point, they could not trump the binding precedent created by the Eleventh Circuit in *McGregor.*

21. Although not dispositive, the Court has located several FMLA opinion letters issued by the U.S. Department of Labor that support the conclusion that an employer may designate an employee's leave as FMLA leave despite the employee's wishes. The employer has the discretion as to how to qualify an employee's leave: "[t]he employee may not ... bar the employer from designating any qualifying absence as FMLA leave." *See* 30 Op. FMLA 83 (1997); 24 Op. FMLA 68 (1996). *Accord Sewall v. Chicago Transit Authority,* 2001 WL 40802 (N.D.Ill. Jan.16, 2001) (finding that once employee deemed unfit for work, employer can deem employee's absence as FMLA leave without employee's express request); *see also Harvender v. Norton Co.,* 1997 WL 793085 (N.D.N.Y. Dec.15, 1997) (the rights established by the FMLA do not include the right to bring an action against an employer for placing an eligible employee on leave; if an employee cannot perform an essential element of her job and, therefore, must be placed on leave, the employer is free to characterize that leave as FMLA leave, if he so chooses). *Love v. City of Dallas,* 1997 WL 278126 (N.D.Tex. May 14, 1997) (where the employee never attempted to return to work or expressed a desire to do so after she recovered from her kidney infection, shortly before her baby was born and employer placed on FMLA leave, court concluded that although it may constitute an adverse employment action for which the plaintiff may have a cause of action under another statute, nothing in the FMLA prohibits an employer from involuntarily placing such an employee on FMLA leave).

set a minimum standard of leave for employers to provide to employees. Under the FMLA, twelve weeks of leave is the maximum leave period that the statute *requires*. To allow an employee, after the occurrence of a qualifying event, to manipulate the date on which she elects to take FMLA leave would effectively permit the employee to unilaterally amend the statute to allow herself a leave of absence in excess of the twelve weeks provided for by law. The Eleventh Circuit has held in *McGregor* that neither an employee nor a regulation can extend the clear legislative provision of a twelve week leave of absence. 180 F.3d at 1308. As applied to this case, *McGregor* therefore holds that plaintiff's 36 days of accumulated sick and annual leave began running on December 7, 1998 and did not otherwise extend the twelve week period of FMLA leave that otherwise expired on March 1, 1999.

▮ Plaintiff contends, however, that because she had been on a lengthy administrative leave that was not explicitly terminated by the employer when the child

was born, her FMLA leave period did not begin to run until the date that she was "officially" notified that the administrative leave had ended. This is a factual wrinkle without any effect. If an employer can insist that earned paid leave run concurrently with the twelve week FMLA mandated leave of absence, it can certainly insist that an unearned paid leave of absence can be treated in the same manner, with or without prior notification.[22] In short, an employee cannot stack paid leaves of absence, no matter how they are denominated, to receive an additional twelve week unpaid FMLA leave once the paid leave period has expired.

Moreover, even if plaintiff were correct that her FMLA leave only began on February 19th,[23] the date that she undisputedly received defendant's February 2nd letter requesting her to fill out FMLA request forms, she could have received only twelve weeks of further leave under the FMLA from that point. Counting twelve weeks from February 19th, plaintiff should have returned to work at the latest, on May 14, 1999.[24] Defendant More-

---

22. Even if it were important whether plaintiff were aware that her paid administrative leave had ended, the facts do not favor plaintiff on this assertion. That is, plaintiff does not dispute that the investigation of the Office of Community Services ended in November of 1998, which ongoing investigation was the reason for the paid administrative leave for the section. (Gaffney Dep. at 22.) Further, plaintiff concedes that she was aware that a coworker had returned to work from administrative leave around this time. (Pl.'s Stmt. of Mat. Facts [22] ¶ 28.) Therefore, these facts do not warrant an inference that plaintiff would have been unaware that her administrative leave was at an end. Indeed, although he could have insisted that plaintiff return to work in her last month of pregnancy, as the purported reason for the administrative leave had ended, Eddie Gaffney was kind enough not to require plaintiff to return, precisely because she was about to deliver a child.

23. Actually, even accepting plaintiff's argument that her FMLA leave only began when

defendant formally ended the administrative leave, defendant clearly ended that leave as of February 2, 1999: the date of the letter it wrote to plaintiff asking her to return her FMLA form. That plaintiff claimed not to have received this letter the first two times that it was mailed to her and acknowledges its receipt only when it was hand delivered on February 19th does not change the fact that the letter was dated February 2, 1999. Counting twelve weeks from February 2 means that, even under plaintiff's argument, the FMLA leave ended on April 26, 1999. Plaintiff, who never returned to work at all, missed this April deadline, just as she missed every other arguable deadline in this case.

24. In her deposition, plaintiff testified that she believed her FMLA leave started on February 22, 1999. (Johnson Dep. at 75.) She states she based this belief on what Gaffney told her. (*Id.*) Plaintiff then testified that twelve weeks from February 22, 1999 is May 17, 1999. (*Id.*) However, plaintiff testified

house did not terminate plaintiff until three days later, on May 17, 1999. Accordingly, even under plaintiff's theory, she remained on leave longer than the twelve week period allowed her by statute and therefore Morehouse was entitled to terminate her.

In summary, the Court concludes, as a matter of law, that plaintiff's FMLA leave began on December 7, 1998, the date of the birth of her child, and ended on March 1, 1999. Even accepting plaintiff's argument that her FMLA leave began on February 19, 1999, however, such leave would have expired on May 14, 1999. As plaintiff never returned to work at all and as the defendant did not fire plaintiff until May 17, 1999, plaintiff has no basis for a claim that the defendant violated the FMLA by terminating her for leave in excess of the twelve week period allowed by that statute.

## 2. *Can a Supervisor Change the Terms of FMLA?*

■ Plaintiff's alternative argument— that Gaffney ratified her return to work date following her FMLA leave—is based on an assumption that a supervisor can unilaterally change the employer's obligations to an employee under the FMLA. Plaintiff argues that Gaffney voluntarily extended her rights "under the FMLA" to give her an additional twelve weeks of

leave in addition to the eleven weeks she was given from December 7, 1998 to February 19, 1999. Defendant responds that, even accepting for purposes of summary judgment that Gaffney did make such a promise, a supervisor does not have the ability to extend the FMLA protection afforded to an employee under federal law, and thereby subject the employer to federal liability under the FMLA, if the provisions of the statute do not so provide. (Def.'s Reply Br. in Supp. of Mot. for Summ.J. [23] at 8.)

The Court agrees with Morehouse. Gaffney did not have the authority to extend the FMLA protection afforded Johnson under federal law and thereby to subject Morehouse to federal liability in the process. For the reasons stated above, Morehouse satisfied its obligations under the FMLA in that it provided Johnson with 23 weeks of leave following the occurrence of a FMLA qualifying event. By holding plaintiff's job for her for more than five months, defendant gave plaintiff almost twice the amount of leave that was required of it under the FMLA. As the Eleventh Circuit stated in *McGregor*, "the statute does not suggest that the twelve week entitlement may be extended," even though an employer may certainly adopt or retain leave policies that afford more leave than the minimum leave mandated by the FMLA. *McGregor*, 180 F.3d at

that she was not required to return to work on May 17, 1999, but instead was required to return to work on May 19, 1999 because "there were two additional holidays during the 12-week period that the college was not open." (*Id.* at 76.) In later testimony, when disagreeing with an assertion made by her previous attorney that her FMLA leave expired on May 14, 1999, plaintiff testified that her leave expired on May 19, 1999. (*Id.* at 89–90.) In her Declaration, plaintiff claims, however, that she "was due to come off of her FMLA leave on May 17, 1999, however, she was unlawfully terminated on May 17, 1999, the dusk of her twelve week period." (John-

son Decl. ¶ 4 attached as Ex. 12 to Pl.'s Resp. To Def.'s Mot. for Summ.J. [22].) The maximum mandatory FMLA leave time required under the statute is twelve weeks or sixty week days regardless of any holidays that occur during the FMLA period. *See McGregor*, 180 F.3d at 1308. Plaintiff's calculation of her FMLA leave period gives her, if the May 17, 1999 day is accepted, sixty one work days of leave, one work day over the required time of FMLA leave. Therefore, even under her theory that her FMLA period began on February 22, 1999, she would have been required to return to work on May 14, 1999.

1308. *See also Ragsdale*, 218 F.3d 933, 937 (8th Cir.2000) ("under the FMLA, twelve weeks is both the minimum that an employer must provide and the maximum that the statute requires").

Moreover, as noted *supra*, even if Gaffney had made a promise to start plaintiff's FMLA leave on February 19th, she still remained away from her job for more than twelve weeks. Accordingly, for all the above reasons, the Court grants defendant's Motion for Summary Judgment as to plaintiff's claim that Morehouse interfered with her FMLA statutory rights.

### C. *Retaliation Claims*

█ Plaintiff has also asserted a retaliation claim. Unlike an interference claim, a plaintiff who asserts a retaliation claim must prove that the employer acted with the requisite intent to retaliate. *See Cross v. Southwest Recreational Indus., Inc.*, 17 F.Supp.2d 1362, 1369 (N.D.Ga.1998) (Murphy, J.). "To state a claim [for retaliation] under the FMLA, a plaintiff must show that: (1) she availed herself of a protected right; (2) she suffered an adverse employment decision; and (3) there [was] a causal connection between the protected activity and the adverse employment decision." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir.2000). To establish the causal connection element, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985)).

Morehouse does not dispute that Johnson has satisfied the first two elements of the *prima facie* case. Johnson did engage in protected conduct by taking FMLA leave after the birth of her child, and she also suffered the adverse employment action of being discharged. The dispute

boils down to the legal question whether, on the undisputed facts in this case, plaintiff has set out a claim of retaliation.

Plaintiff alleges that Morehouse "retaliated against [her] by failing to return her to the same position that she held when [her FMLA] leave commenced." (Compl. [1] at 1.) Under plaintiff's version of the facts, Morehouse informed her that she had been terminated at the end of her FMLA leave because she had been out so long and it was "unfair to other staff members of that office to have a slot that was not functional." (Pl.'s Resp. to Def.'s Mot. for Summ.J. [22] at 13.) Further, plaintiff claims that Gaffney informed her that if she "dropped her FMLA claim," she could have her job back. (*Id.*) Plaintiff contends that, taking all factual inferences in her favor, these facts alone establish that Morehouse fired her in retaliation for her use of FMLA leave.

Morehouse responds that plaintiff's argument is illogical and inconsistent. Morehouse notes that if Gaffney truly had offered to extend Johnson's leave until February 19, 1999, it would be inconsistent of him to terminate her on the last day of the voluntarily given extension of time. (Def.'s Reply Br. in Supp. of Mot. for Summ.J. [23] at 10.) Further, in combination with the fact that Gaffney believed he had forwarded her sick leave, which he states he "wouldn't have advanced her" if he was expecting her not to come back, it is very unlikely that Gaffney harbored any ill will against plaintiff resulting in a retaliatory firing for her exercise of FMLA rights. (Gaffney Dep. at 35.) Rather, Morehouse continues, it was Johnson's consistent failure to communicate with Morehouse regarding a request for additional leave without pay and failure to inform Morehouse of an intended return to work date, that ultimately left Morehouse with no alternative but to dismiss Johnson.[25] (Def.'s Memo. in Supp of Mot. for Summ.J. [19] at 13.)

25. As Gaffney testified in his deposition:

We never wanted to terminate her ... our entire mission was to bring her back on

The FMLA statute makes it " 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter ...' 29 U.S.C. § 2615(a)(1)." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir.2000). The statute also makes it " 'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter [of the FMLA.]' 29 U.S.C. § 2615(a)(2)." *Id.* Finally, the statute makes it unlawful to discharge or otherwise discriminate against an individual because such person has filed any charge under the subchapter. 29 U.S.C. § 2615(b)(1). As noted by the Eleventh Circuit in *Brungart*, the FMLA nowhere uses the term "retaliation," although the statute does appear to contemplate retaliatory action. According to *Brungart*, a prohibition of retaliation is implicit in the statute to the extent that "an employer may not do bad things to an employee who has exercised or attempted to exercise any rights under the statute." 231 F.3d at 798 n. 5.

■ Examined against the above statutory language, plaintiff's retaliation claim appears to be little more than a rehash of her substantive FMLA claim. In essence, she argues that defendant was not permitted to fire her as a result of her refusal to return to her job because this refusal was warranted by the FMLA. But that is just another way of saying that the FMLA permitted plaintiff to remain off the job for over five months after the birth of her child: an argument that this Court has roundly rejected in the preceding discussion. Obviously, as long as the employee has been given the requisite leave period under the FMLA, the FMLA does not forbid an employer from firing an employee who simply refuses to come back to work, as did this plaintiff. Thus, by firing plaintiff, defendant did not discharge her for opposing any practice made unlawful by the FMLA. *See* 29 U.S.C. § 2615(a)(2). Defendant terminated plaintiff because she refused to come back to work[26] and, as

---

board primarily because she understood the nature of the beast so it didn't make sense to hire somebody and retrain them. We wanted her back. She wouldn't cooperate with us. So we felt we had no other alternative [then to fire her].
(Gaffney Dep. at 57.)

26. In addition to her refusal to return to work at the end of the twelve week period of time, plaintiff also refused to return in a timely manner the necessary FMLA forms for such leave. When an employee's leave is "foreseeable," the FMLA statute requires the employee "to provide the employer with not less than thirty days' [advance] notice." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208–1209 (11th Cir.2001); 29 U.S.C. § 2612(e)(2). On February 19, 1999, Johnson admits she received a letter from Gaffney asking her to submit the FMLA form enclosed in the letter. (SMF ¶ 50.) She refused to do so. On March 26, 1999, Johnson

admits she received an additional letter from her supervisor Nimes, again asking her to submit the FMLA form and a physician's statement. (SMF ¶¶ 80, 81.) In the March 26 letter, she was informed that if she failed to submit the FMLA form by April 9, 1999, she would be expected to return to work on April 12, 1999. (*Id.*) Again, plaintiff neither returned the forms nor returned to work on April 12, 1999. Indeed, plaintiff did not submit the forms until May 4, 1999. (*Id.* ¶ 82.)

Furthermore, the accompanying physician's statement indicated that Johnson had ceased being medically incapacitated as of February 1, 1999. (*Id.* at 83.) Finally, while Johnson alleges that she attempted to contact her employers at Morehouse on several occasions during this interval, she admits she did not speak with any of her supervisors at Morehouse to explain her failure to submit the proper forms or her absence from work. (Pl.'s Stmt. of Mat. Facts ¶¶ 38–43.) It is hard to envision a clearer instance of job abandonment than that shown by this plaintiff.

discussed *supra,* the FMLA provides no protection for such recalcitrance.

Indeed, it is clear to this Court that plaintiff's type of claim is one that is not covered by any prohibition against retaliation in the statute. In contrast, *Brungart* posed the protypical factual scenario for a retaliation claim under the FMLA. There, the plaintiff had requested, in advance, three weeks of FMLA leave in order that plaintiff Brungart could have knee surgery; the leave was proper under the FMLA and was approved by plaintiff's immediate supervisor. Prior to the date in which the plaintiff was to begin her leave, however, the defendant employer terminated her, allegedly for serious work performance deficiencies. *Brungart,* 231 F.3d at 794. Plaintiff Brungart contended that her dismissal was actually in retaliation for her anticipated use of FMLA leave.[27]

 *Brungart* presents the typical FMLA retaliation scenario in which an employer sanctions an employee, either after the latter has been granted permission for FMLA leave in the future or has re-turned to work following the completion of the FMLA leave. Neither of these scenarios occurred here. Unlike in *Brungart,* plaintiff was not sanctioned for anticipated FMLA leave. She was given her full twelve weeks and more. In short, in a dispute concerning the amount of an FMLA leave that an employee can take, an employer who has fired an employee for exceeding her FMLA leave, and who later turns out to be wrong in his calculations, may be held liable on an interference claim for denying the exercise of a right provided by the FMLA, pursuant to 29 U.S.C. § 2615(a)(1). The employer's liability, however, depends totally on whether he calculated correctly the FMLA leave to which the employee was entitled. Such an employer is not subject to the "retaliation" prohibitions of the statute by virtue of his miscalculation, alone.

Plaintiff also avers that Gaffney and Rawles informed her that she could have her job back if she dropped her FMLA claim.[28] As noted *supra,* plaintiff must show a causal connection between *statuto-*

---

**27.** Ultimately, the Eleventh Circuit rejected the plaintiff's claim of retaliation, concluding that, because the manager who fired plaintiff had been unaware that she was scheduled for FMLA leave, the former necessarily would have been unable to retaliate for a matter of which he was unaware. Accordingly, the plaintiff had failed to make a *prima facie* case. *Brungart,* 231 F.3d at 798–800.

**28.** Plaintiff's counsel states that:

[plaintiff] has also stated that Mr. Gaffney and Ms. Rawls [sic] both told her if she would drop her FMLA claim she could keep her job. Both Gaffney and Rawls [sic] deny saying these remarks ... If a jury finds that Mr. Gaffney lied about the meeting he had with [plaintiff], a jury could also find that Gaffney intentionally wanted to get [plaintiff] fired and take away the money she made while she was on involuntary administrative leave.

(Pl.'s Resp. to Def.'s Mot. for Summ.J. [22] at 13–14.) Plaintiff's counsel provides no record cites to direct the Court to where plaintiff made such allegations. In addition, defendant's counsel fails to address this point in its reply brief. (*See* Reply Brief in Supp. of Summ.J.Mot. [23].) The Court was able to locate where Johnson alleges that Rawles indicated to her that if she "drop[ped] the FMLA stuff, they wouldn't penalize [her]." (Johnson Decl. ¶ 55 attached as Ex. 12 to Pl.'s Resp. To Def.'s Mot. for Summ.J. [22].) The Court, however, was unable to locate where plaintiff states that Gaffney made any such statement. While it is true that the Court is to construe all factual inference in the nonmovant's favor in a summary judgment motion, any such inferences must at a minimum be based on specific factual allegations stated in the record. The failure of plaintiff's counsel to direct the Court to evidence that Gaffney made such statements reflects, at best, sloppy advocacy or, at worst, a misrepresentation of plaintiff's testimony. Nevertheless, the Court will assume, for this discussion, that both Gaffney and Rawles made such a statement.

*rily protected conduct* and her termination. Plaintiff's statutorily protected conduct was her use of twelve weeks of leave following the birth of her child. Clearly, as plaintiff's FMLA leave expired on March 7th and she was not fired for over two more months, there is no causal connection between her "protected conduct" and her termination. Indeed, as noted, plaintiff did not even return to work in the appropriate period of time under her own theory of how the FMLA operated. In short, an employee's insistence on taking more leave than is allowed by the FMLA is not protected conduct.

■ As to Rawles and Gaffney's alleged offer to give plaintiff her job back, if she would drop her FMLA claim, the statute makes it unlawful to discharge or otherwise discriminate against an individual because such person has filed any charge under the subchapter. 29 U.S.C. § 2615(b)(1). As plaintiff had already been terminated when this conversation allegedly occurred, defendant's discharge of her necessarily could not have been *because* of her subsequent decision to file this litigation. Nor does Rawles and Gaffney's purported offer to reinstate plaintiff if she dropped her litigation constitute discrimination because plaintiff had opposed an "unlawful practice." Defendant's practice—requiring an employee to return to work after five months of leave—was totally lawful; moreover, this Court is aware of no case authority that classifies as retaliation an employer's willingness to condition the reinstatement of an employee who was fired for just cause on the latter's willingness to drop litigation challenging the termination. Indeed, Rawles and Gaffney's offer, if made, seems to be entirely consistent with the generous and solicitous attitude that defendant took toward plaintiff throughout her long period of leave.

In conclusion, the Court **GRANTS** defendant's motion for summary judgment on plaintiff's retaliation claim.

### III. *Plaintiff's Breach of Contract Claims*

■ Because all the claims over which the Court had original jurisdiction now have been removed from the case due to the Court's decision to grant defendant's motion for summary judgment with respect to plaintiff's federal claims, § 1367(c)(3) applies. This section provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Supreme Court has observed, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (footnote omitted). *See also Hardy v. Birmingham Bd. Of Educ.,* 954 F.2d 1546, 1550 (11th Cir.1992).

The Court concludes that dismissal is appropriate in this case because plaintiff's federal claims have been dismissed. Moreover, "[n]eedless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certain-

ly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court **DISMISSES without prejudice** plaintiff's remaining state law claims.

## CONCLUSION

For the foregoing reasons, the Court finds that defendant's Motion for Summary Judgment [19–1] for plaintiff's FMLA claims is **GRANTED.** Plaintiff's claims arising under state law are **DISMISSED without prejudice.**